```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

UNITED STATES OF AMERICA     :
                             :
       v.                    :     Case No. 2:00-cr-119
                             :
STEPHEN AGUIAR               :

**OPINION AND ORDER**

Defendant Stephen Aguiar, proceeding *pro se*, has filed a petition for writ of error coram nobis challenging his 2001 conviction for possession of heroin with intent to distribute. Aguiar contends that his defense attorney misadvised him about the statutory maximum sentence, and that this advice played a significant role in his decision to plead guilty.  Although Aguiar has completed his sentence, he claims to be suffering continuing injury because a more recent sentence was enhanced by the 2001 conviction.

The government opposes the petition, arguing that it is untimely and legally unsupported.  For the reasons set forth below, the petition is **denied**.

**Factual Background**

Aguiar alleges in his petition that he was arrested in Burlington, Vermont on November 6, 2000.  In the course of the arrest, law enforcement seized 20.1 grams of heroin and 84.6 grams of powder cocaine.  Aguiar admitted in a post-arrest statement that the drugs belonged to him.

On December 7, 2000, a federal grand jury returned a two-

count indictment charging Aguiar with possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), and possession with intent to distribute a quantity of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). Defense counsel allegedly advised Aguiar that he faced a potential sentence of ten years to life on Count One.

The defense subsequently filed a motion to suppress Aguiar's post-arrest statement. Prior to the suppression hearing, the prosecution communicated to defense counsel that if the hearing went forward, the government would ultimately argue for an obstruction of justice enhancement and oppose any acceptance of responsibility reduction. After relaying this message to his client, defense counsel presented Aguiar with a plea agreement.

The agreement proposed that Aguiar would plead guilty to a single count and be sentenced under Section 841(b)(1)(C) for less than 100 grams of heroin. There would be no statutory minimum, but according to counsel the Court could impose a sentence of up to 30 years in prison and supervised release of no less than six years to life. Aguiar would stipulate to a base offense level of 26 based upon drug quantity, including relevant conduct of 200 grams of heroin and 840 grams of cocaine. Counsel reportedly advised Aguiar that, given the possibility of a life sentence if the case went to trial, he should accept the plea agreement.

Aguiar did offer to plead guilty, but claims that he "vehemenly contested" the drug amount alleged in the plea agreement, and informed the Court at the Rule 11 hearing that the plea deal felt coerced and involuntary. The transcript from the Rule 11 hearing reveals that when the Court asked Aguiar whether anyone had threatened him or forced him in any way to plead guilty, Aguiar responded: "No, sir." ECF No. 43 at 7. Aguiar did inform the Court that he was entering a guilty plea in order to avoid a charge of obstruction of justice and remain eligible for acceptance of responsibility. The Court made clear that those issues would be decided in a "separate determination," and that acceptance of responsibility was not necessarily determined by whether Aguiar had "objected to the introduction of evidence or not." *Id.* at 12.

Aguiar further explained to the Court that he had weighed the risks and benefits of a plea, that there was "no question [as] to [his] guilt," but that he believed the police were being untruthful about his post-arrest statement and "that there are guidelines that people have to go by." *Id.* at 14-15. The Court took a short recess so that Aguiar could again discuss the agreement with his attorney.

When the hearing resumed, defense counsel reiterated that Aguiar remained disturbed about potential police dishonesty. Counsel also conceded that even if the post-arrest statement was

3

suppressed, arguments for suppression of other drug evidence were a "long shot" and that Aguiar was aware of this fact. *Id.* at 18. When Aguiar asked about how the Court makes credibility determinations, both defense counsel and the Court explained that a totality of circumstances test would be applied. When Aguiar suggested that he take a polygraph test, the Court discussed the admissibility of such a test. The Court then took a second brief recess.

After the second recess, Aguiar informed the Court of his belief that "it's within my best interests to accept the plea agreement." *Id.* at 43. The government provided a proffer of facts to which Aguiar agreed, and the Court accepted the plea. With regard to the government's threat to oppose acceptance of responsibility if the suppression hearing went forward, the Court noted that in any plea agreement "[b]oth sides give up something and both sides get something in return. So I don't think that there really is any question about voluntariness here." *Id.* at 43. Aguiar was subsequently sentenced to 92 months in prison to be followed by a six-year term of supervised release.

Aguiar now claims that throughout the criminal proceeding, his attorney and the Court assumed that he would be subject to a sentence enhancement under Section 851, when in fact there could be no such enhancement because the government failed to file a Section 851 information. Aguiar further argues that without the

required Section 851 information, he was subject to a maximum sentence of 40 years under Section 841(b)(1)(B), and not the life sentence of which his attorney warned.  Aguiar also claims that his supervised release would have been capped at three years, and not the six to which he was sentenced.  This misinformation from counsel allegedly played a substantial role in Aguiar's decision to plead guilty.

In 2009, having served fewer than three years of his supervised release on the 2001 sentence, Aguiar was arrested and charged with conspiracy.  Because of his arrest, his supervised release was revoked.  In 2011, he was convicted of conspiracy and sentenced to 30 years in prison to be followed by 10 years of supervised release.  He was also convicted of violating his previous supervised release, and given a concurrent sentence of 36 months.  Aguiar claims that his most recent sentence was enhanced by the 2001 conviction under 28 U.S.C. § 851, as well as United States Sentencing Guideline § 4B1.1.  He contends that without these enhancements, his minimum statutory sentence would have been 10 years, and not the 30 years to which he was sentenced.

Aguiar reports that his 2001 sentence, including supervised release, expired on August 4, 2014.  He filed his petition for writ of coram nobis on September 29, 2014.  The government concedes that it never filed a Section 851 information in the

2001 case, but contends that the indictment alleging a previous felony conviction was the "functional equivalent." The government also argues that the petition is untimely, and that Aguiar has failed to explain why he failed to raise these issues earlier.

## Discussion

### I. Legal Standard

The writ of coram nobis is an exceptional remedy to be granted "only where extraordinary circumstances are present." *Nicks v. United States*, 955 F.2d 161, 166–67 (2d Cir. 1992). It "is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." *Fleming v. United States*, 146 F.3d 88, 89–90 (2d Cir. 1998). "[T]he power of the [C]ourt . . . to vacate . . . judgments for errors of fact exist[s] . . . [only] in those cases where the errors were of the most fundamental character; that is, such as rendered the proceeding itself irregular and invalid." *United States v. Mayer*, 235 U.S. 55, 69 (1914); *Foont v. United States*, 93 F.3d 76, 78 (2d Cir. 1996) (same); *see also Carlisle v. United States*, 517 U.S. 416, 429 (1997) (noting that "it is difficult to conceive of a situation in a federal criminal case today where [a writ of coram nobis] would be necessary or appropriate" (internal quotation

6

marks omitted)). In keeping with these principles, the Second Circuit has articulated a three-pronged standard for when coram nobis relief is appropriate: "1) there are circumstances compelling such action to achieve justice; 2) sound reasons exist for failure to seek appropriate earlier relief; and 3) the petitioner continues to suffer legal consequences from his [or her] conviction that may be remedied by granting of the writ." *Foont*, 93 F.3d at 79 (quoting *Nicks*, 955 F.2d at 167 and *United States v. Morgan*, 346 U.S. 502, 511 (1954)).

When determining whether to grant coram nobis relief, the prior proceedings are presumed to have been conducted correctly and it is Petitioner's burden to prove otherwise. *See Morgan*, 346 U.S. at 512 ("It is presumed [that] the proceedings were correct and the burden rests on the accused to show otherwise."); *Nicks*, 955 F.2d at 167 ("[W]e must presume the proceedings were correct. The burden of showing otherwise rests on the petitioner.").

## II. Timeliness Under 21 U.S.C. § 851(e)

The government first argues that because Aguiar is challenging a 2001 conviction that was used in calculating his 2009 sentence, his challenge is untimely under 21 U.S.C. § 851(e). Section 851(e) provides:

> No person who stands convicted of an offense under this part may challenge the validity of any prior conviction alleged under this section which occurred more than five years before the date of the information alleging

such prior conviction.
Aguiar's 2001 sentence is plainly outside this five year statute of limitations.

Aguiar responds that Section 851(e) applies only to sentencing, and not to collateral attacks. The District of Massachusetts recently reached that same conclusion with regard to habeas corpus petitions. *Vizcaino v. United States*, 981 F. Supp. 2d 104, 109 (D. Mass. 2013). In *Vizcaino*, Judge Saris found that "the prohibition on raising 'challenges' that were over five years old only restricts defendants from raising such challenges within the federal sentencing forum. . . . [T]here is no clear statement [in the statute] that such challenges could not be . . . used as a basis for a federal habeas motion . . . ." 981 F. Supp. 2d at 109. Although *Viscaino* was a habeas corpus case, the Second Circuit has held that federal habeas principles are often instructive in the coram nobis context. *See, e.g., Fleming v. United States*, 146 F.3d 88, 90 n.2 (2d Cir. 1998).

In this case the Court need not determine the question of whether Section 851(e) applies since, as discussed below, Aguiar's petition is barred for failure to seek relief previously and for lack of prejudice.

**III. Failure to Seek Relief Previously**

"[A]lthough coram nobis relief has no specific statute of limitations, such relief 'may be barred by the passage of time'"

8

depending on the facts and circumstances of the individual case. *Sahin v. United States*, No. 8:13-CV-358, 2014 WL 2177088, at *2 (N.D.N.Y. May 22, 2014) (italics omitted) (quoting *Foont*, 93 F.3d at 79). "Therefore, unless the petitioner can demonstrate sufficient justification for his failure to seek relief at an earlier time, the writ is unavailable and his petition for coram nobis should be dismissed." *Id.* (italics and internal quotation marks omitted); *see also Nicks*, 955 F.2d at 167-68 (describing the Court's task as to "determine whether [the petitioner] had sound reasons for his lengthy delay in seeking coram nobis relief" (italics omitted)).

Aguiar claims that he first learned about the Section 851 information requirement during a status conference in 2011, held in the context of his more recent conspiracy conviction. In August 2012, he reviewed the 2001 case docket and discovered that no such information was filed. Aguiar also reports that he first learned of the coram nobis remedy in 2011. Nonetheless, he failed to file his petition until approximately three years later. Courts in this Circuit have widely held that such a delay is unacceptable. *See Rodriguez v. United States*, No. 98-CR-764, 2012 WL 6082477, at *10 (S.D.N.Y. Dec. 4, 2012) (more than two-year delay); *Ejekwu v. United States*, No. 02-CV-699, 2005 WL 3050286, at *3 (E.D.N.Y. Nov. 14, 2005) (more than two-year delay); *Cisse v. United States*, 330 F. Supp. 2d 336, 344

9

(S.D.N.Y. 2004) (one-year delay); *Mastrogiacomo v. United States*, No. 90-CR-565, 2001 WL 799741, at *2 (S.D.N.Y. July 16, 2001) (three-year delay); *see also United States v. Abramian*, No. 02-CR-945, 2014 WL 4702584, at *4 (C.D. Cal. Sept. 22, 2014) (more than two-year delay); *United States v. Rankin*, 1 F. Supp. 2d 445, 454 (E.D. Pa. 1998) (more than two-year delay).

Aguiar blames the delay in part upon the fact that he has been represented by the same attorney since 2001. At the same time, he concedes that he was able to discover the lack of a Section 851 information when he received a copy of the docket sheet in 2012. He further claims that the delay was due to a traumatic brain injury, and cites a neuropsychological evaluation from 2010 indicating "cognitive and emotional sequelae of both untreated Attention Deficit Disorder and traumatic brain injury." ECF No. 37-9 at 19. In order to convince the Court that a delay should be excused, it is the petitioner's burden "to show that these problems rendered him unable to pursue his legal rights." *Torres v. Miller*, No. 99-CIV-0580, 1999 WL 714349, at *8 (S.D.N.Y. Aug. 27, 1999). Here, Aguiar does not explain why, despite this alleged injury, he was able to file in 2014 and not earlier. He has therefore failed to carry his burden.

In his reply memorandum, Aguiar details his efforts to perform legal research and obtain corroborating evidence after his receipt of the docket sheet in 2012. Those efforts were

impeded, in part, by time that Aguiar spent in administrative segregation, presumably for some form of misconduct. Aguiar also explains that, in the face of other Court filings suggesting that a Section 851 information *had* been filed in the 2001 case, he did not want to rely solely upon the lack of a docket entry. Ultimately, however, he did just that, filing his petition in 2014 and obtaining confirmation of his "hunch" when the government filed its response. Of course, an earlier and more timely filing would have achieved the same result.

The Court therefore finds that Aguiar's petition is untimely, and may be **denied** on that basis.

## IV. Prejudice

The Court also finds that Aguiar has failed to show prejudice arising out of his guilty plea. The essence of his claim is ineffective assistance of counsel, which requires a showing of not only ineffectiveness but also prejudice. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984) (petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). The failure to raise an issue on direct appeal, as Aguiar has done here, also bars further relief unless the petitioner can show prejudice. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

At the Rule 11 hearing, which was initially called in order

11

to hear Aguiar's suppression motion, defense counsel explained that even if the suppression motion was successful his client was likely to be convicted on the basis of other evidence. Furthermore, in the course of that hearing Aguiar admitted his guilt and agreed to the government's factual proffer.  While Aguiar now contends that his attorney's poor advice was a substantial factor in his decision to plead guilty, the likelihood of his conviction at trial, and his re-arrest in 2009 in the midst of his supervised release term, rendered that advice essentially harmless.  The Court further notes that Aguiar received downward departures at sentencing, including acceptance of responsibility, and that those departures may not have been awarded in the face of a likely government objection post-trial. Aguiar has therefore failed to demonstrate prejudice arising out of his guilty plea, and his coram nobis petition is **denied**.

**V. Conclusion**

For the reasons set forth above, Aguiar's petition for a writ of coram nobis (ECF No. 37) is **denied**.

Dated at Burlington, in the District of Vermont, this 29th day of April, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
