UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

    v.                             Crim. Action No. 2:00-cr-119

Stephen Aguiar

## REPORT AND RECOMMENDATION
(Docs. 67, 75, 77)

Stephen Aguiar, proceeding *pro se*, has filed a Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence.  (Doc. 67.)  On July 23, 2001, Aguiar was sentenced in this Court to a 92-month term of imprisonment together with a six-year term of supervised release following his plea of guilty to one count of possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1).  (Doc. 25.)  Aguiar now seeks to vacate that 2001 conviction.  He also seeks to vacate a 2011 Judgment on Revocation entered under 18 U.S.C. § 3583(e) in which an additional 36-month term of imprisonment was imposed after Aguiar violated his supervised release term by committing new Title 21 offenses.  (Doc. 34.)

In his Motion, Aguiar contends he received ineffective assistance of counsel (IAC) in both his 2001 prosecution and his 2011 supervised release proceedings.  He raises three specific IAC contentions: (1) because the government never filed an information alleging the existence of a prior drug felony conviction as required under 21 U.S.C. § 851, Aguiar's attorney misadvised Aguiar about the statutory maximum exposure for his offense conviction, which led him to plead guilty; (2) Aguiar's

attorney failed to challenge the imposition of a six-year term of supervised release at sentencing, though Aguiar's maximum exposure was limited to a three-year term of supervised release under 21 U.S.C. § 841(b)(1)(C); and (3) Aguiar's attorney failed to appeal from Aguiar's revocation of supervised release despite Aguiar directing him to do so.  (Doc. 67 at 5–7.)  In addition, Aguiar contends in a Motion to Amend his pending § 2255 Motion that on December 15, 2011 the Clerk of Court failed to docket a *pro se* Notice of Appeal of his supervised release sentence.  (Doc. 77-1 at 23–24, 29.)  Finally, Aguiar claims he is "actually innocent" of his supervised release violation because the six-year term of supervised release exceeded the lawful term. (Doc. 67 at 9.)

The government opposes Aguiar's Motion, arguing that it is barred by the one-year statute of limitations governing § 2255 motions.  (Doc. 72 at 4–5.)  The government also contends that the Court lacks jurisdiction to consider the Motion because Aguiar, who is currently serving a term of imprisonment for a 2011 federal conviction, is no longer in custody as a result of his 2001 conviction and subsequent supervised release violation.[1]  (*Id.* at 3–4.)  Concluding that Aguiar's Motion to

---

[1] In a footnote in its Opposition, the government states that some of the claims raised by Aguiar have been "conclusively decided by this Court."  (Doc. 72 at 5, n.1.)  In advancing this argument, the government perhaps relies upon the law-of-the-case doctrine, which is described as follows: "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (internal quotation marks omitted).  The mandate rule is a specific application of the law-of-the-case doctrine, barring a district court from "reconsidering or modifying any of its prior decisions that have been ruled on by the court of appeals."  *United States v. Stanley*, 54 F.3d 103, 107 (2d Cir. 1995) (quoting *United States v. Minicone*, 994 F.2d 86, 89 (2d Cir. 1993)).  This rule applies when a circuit court remands a case to the district court, *see Burrell v. United States*, 467 F.3d 160, 165 (2d Cir. 2006), or when a party files a new motion in the district court following an appeal, *see United States v. Cirami*, 563 F.2d 26, 33 (2d Cir. 1977).  While the government's argument may have merit, it is raised only in a footnote without citation to legal authority; thus, I decline to consider it.

Vacate, Set Aside, or Correct Sentence (Doc. 67), is barred by the one-year statute of limitations governing § 2255 motions, I recommend that it be DENIED.

For the reasons explained below, I also recommend that Aguiar's more recently filed Motion to Consider Additional Evidence in Support of Petitioner's Motion Under 28 U.S.C. § 2255 (Doc. 75) be DENIED as unnecessary; and that Aguiar's Motion for Leave to Amend 28 U.S.C. § 2255 Motion (Doc. 77) be DENIED as the claims raised therein are also barred by the statute of limitations.

## Factual and Procedural Background

Back in September 2014, in a Petition for Writ of Error *Coram Nobis*, Aguiar raised his current challenges to his attorney's performance at his 2001 sentencing and subsequent supervised release violation proceedings.  (Doc. 37.)  The Court denied the Petition in an April 2015 Opinion and Order, concluding that it was untimely and that Aguiar had failed to show the requisite prejudice resulting from his attorney's allegedly ineffective assistance.[2]  (Doc. 48.)  The following facts are derived from the factual summary set forth in that Opinion and Order, the record in this case including Aguiar's Presentence Report (PSR), and Aguiar's Memorandum of Law in Support of Motion to Vacate, Set Aside, or Correct a Federal Sentence Under 28 U.S.C. § 2255.  (*See* Docs. 48, 67-1.)

---

[2] The Court also denied Aguiar's motion for reconsideration of the April 2015 Opinion and Order (Docs. 49, 63), and Aguiar appealed from that denial (Doc. 64).  The Court of Appeals dismissed the appeal on January 11, 2018.  *United States v. Aguiar*, No. 17-2547 (2d Cir. Jan. 11, 2018) (order denying motion and dismissing appeal). The Court's mandate was issued on March 16, 2018.  (Doc. 78.)

## I.    2001 Conviction and Sentencing

According to his 2001 PSR, in 1994, Aguiar was convicted in the United States District Court for the District of Vermont of possession of stolen firearms and distribution of morphine, a controlled substance.  He was sentenced to two concurrent 63-month terms.  Following his release from the custody of the Bureau of Prisons (BOP), Aguiar violated conditions of his supervised release and was sentenced to an additional term of one year and a day in prison.  (PSR at 17–18, ¶ 70.)  Following his release from the BOP in 2000, investigators received information that Aguiar had returned to drug trafficking, and law enforcement commenced an investigation.  In the course of that investigation, police accomplished controlled purchases of heroin from Aguiar.  (PRS at 3, ¶ 9.)  Aguiar was arrested by law enforcement in Burlington, Vermont on November 6, 2000.  (PSR at 3–7, ¶¶ 7–36.)  During the arrest, law enforcement seized 22.3 grams of heroin and 84.3 grams of powder cocaine.  Aguiar admitted in a post-arrest statement that he had engaged in extensive drug trafficking since his release from prison.  (PSR at 4–5, ¶¶17–22.)

Following Aguiar's November 2000 arrest, Attorney David Williams was appointed to represent Aguiar pursuant to the Criminal Justice Act.  On December 7, 2000, a federal grand jury returned a two-count Indictment charging Aguiar with possession with intent to distribute an unspecified quantity of heroin, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B) (Count I), and possession with intent to distribute a quantity of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C)

(Count II).[3]  (Doc. 5.)  Aguiar contends Attorney Williams advised that he faced a potential sentence of ten years to life if convicted on Count I.

Attorney Williams subsequently filed motions to suppress Aguiar's post-arrest statement and tangible evidence.  (Docs. 9, 12.)  Prior to the hearing on those motions, the government advised Williams that if the hearing went forward and Aguiar testified and was ultimately convicted, the government would argue for an obstruction-of-justice enhancement under § 3C1.1 of the United States Sentencing Guidelines (USSG) and would oppose any acceptance-of-responsibility reduction under USSG § 3E1.1.  (Doc. 48 at 2.)  Williams relayed this message to Aguiar and presented him with a proposed plea agreement.

The written Plea Agreement was filed by the parties on April 10, 2001.  (Doc. 16.)  Therein, Aguiar agreed to enter a plea of guilty to Count I of the Indictment, which charged him with possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1)(A) (2000).  (*Id.* at 1, ¶ 1.)  The Agreement stated that Aguiar faced a maximum sentencing exposure of "up to 30 years of imprisonment, pursuant to 21 U.S.C. § 841(b)(1)(C); [and] not less than 6 years and up to a lifetime period of supervised release, pursuant to 21 U.S.C. § 841(b)(1)(C)."  (*Id.* ¶ 2.)  The Agreement did not require the imposition of a mandatory minimum term of imprisonment. Aguiar stipulated to application of a base offense level of 26 under the then-

---

[3] The text of the charge set forth in Count I alleges that Aguiar possessed heroin with intent to distribute as a person "who had previously been convicted of a felony drug offense," in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).  (Doc. 5 at 1.)  The existence of a prior drug felony offense is not an element of a § 841(a)(1) violation.  Generally, prior convictions do not need to be alleged in an indictment.  *Almendarez-Torres v. United States*, 523 U.S. 224, 243 (1998).  However, 21 U.S.C. § 851 sets forth procedures to be followed in Title 21 cases where an offender has a prior drug felony conviction.

mandatory United States Sentencing Guidelines, based upon relevant conduct and a drug quantity of 200 grams of heroin and 840 grams of cocaine. (*Id.* at 3, ¶ 6.) Aguiar now claims Attorney Williams advised him that, given the possibility of a life sentence if the case went to trial, he should accept the Agreement.

On April 10, 2001, the Court conducted a change of plea hearing pursuant to Fed. R. Crim. P. 11. (Doc. 43.) At the hearing, the Court reviewed the Plea Agreement with Aguiar and explained the essential elements of the offense charged in Count I. Specifically, the Court explained that the government had charged Aguiar in Count I with possession with the intent to distribute heroin as a person with a prior drug felony conviction and that the government would have to prove that Aguiar committed the offense beyond a reasonable doubt. (*Id.* at 5.) The Court conducted the complete colloquy required by Rule 11, and Aguiar indicated his intent to plead guilty to the offense charged in Count I. When the Court asked Aguiar whether anyone had threatened or forced him in any way to plead guilty, Aguiar responded: "No, sir." (*Id.* at 7, 36.) Aguiar informed the Court that he was entering a guilty plea in order to avoid a charge of obstruction of justice and to remain eligible for acceptance of responsibility. (*Id.* at 11.) The Court made clear that those issues would be decided in a "totally separate determination" (*id.*) "somewhere down the road" (*id.* at 12), and advised that the acceptance of responsibility determination would not be determined by whether Aguiar "objected to the introduction of evidence or not" (*id.*).

Aguiar further informed the Court that he had weighed the risks and benefits of a plea and that there was "no question [as] to [his] guilt" (*id.* at 14), but that he believed the police were being untruthful about his post-arrest statement and that "there are guidelines that people have to go by" (*id.* at 15). Aguiar and Williams suggested that Aguiar would be willing to take a polygraph test concerning his post-arrest statement (*id.* at 14, 28), and the Court discussed the admissibility of such a test (*id.* at 28–29). Further, Williams conceded that even if Aguiar's post-arrest statement was suppressed, arguments for suppression of other evidence were a "long shot" and Aguiar understood that. (*Id.* at 18, 22.) Aguiar asked about how the Court made witness credibility determinations, and both Williams and the Court explained that a totality-of-circumstances test would be applied. (*Id.* at 27.) The Court then took a short recess so that Aguiar could again discuss the Plea Agreement with Attorney Williams. (*Id.* at 29.)

When the hearing resumed, Williams stated that he was not sure whether Aguiar was going to accept the Plea Agreement. (*Id.* at 31.) Nonetheless, Aguiar then informed the Court that he was "going to go forward with" the Agreement, as "it's within my best interests to accept the [P]lea [A]greement." (*Id.* at 32.) The Court next took notice of Aguiar's prior drug felony conviction in order to ascertain if Aguiar might face exposure as a Career Offender under the Sentencing Guidelines. (*Id.* at 37–38.) The government expressed its understanding that Aguiar had only one prior drug felony conviction as alleged in general terms in Count I. (*Id.* at 37.) The government thereupon provided a proffer of facts; Aguiar agreed to those facts;

and the Court accepted Aguiar's plea of guilty, finding that it was made freely and voluntarily and with a full understanding of the nature of the charges and the rights waived. (*Id.* at 39–43.)

Next, a PSR was prepared in anticipation of sentencing. The PSR found that Aguiar was responsible for the distribution of over 100 grams of heroin (PSR at 8, ¶ 41),[4] and that Aguiar had numerous prior criminal convictions, including a 1994 drug felony conviction in this Court for distributing morphine (*id.* at 17–18, ¶ 70). Because of this 1994 conviction and a 1987 residential burglary conviction committed when Aguiar was 17 years old, the PSR concluded that Aguiar was a career offender under USSG § 4B1.1 (*id.* at 19, ¶ 71), and therefore faced a sentencing range of 188–235 months (*id.* at 23, ¶ 104).

Aguiar appeared for sentencing on July 23, 2001. (Doc. 30.) Prior to that hearing, Aguiar's counsel filed an objection to the PSR finding regarding a career offender designation, arguing that Aguiar's 1987 burglary conviction could not have been a predicate offense for application of that designation as Aguiar committed the burglary before reaching the age of 18. (Doc. 20.) No other objections were asserted at sentencing. Ultimately, the Court elected not to apply the career offender provisions of the Sentencing Guidelines, explaining that "there's not sufficient proof with regard to the status of the law . . . to justify application of the 1987 conviction as a predicate offense." (Doc. 30 at 6.) The Court therefore sentenced Aguiar to

---

[4] It wasn't until 2005 that the Court of Appeals held that drug quantity was an element of the offense for purposes of determining the application of mandatory minimum terms under 21 U.S.C. § 841(b)(1). *United States v. Gonzalez*, 420 F.3d 111, 115–16 (2d Cir. 2005).

92 months in prison, to be followed by a six-year term of supervised release. (*Id.* at 15–16.) No direct appeal was taken from the judgment. Aguiar was released from the BOP on September 19, 2007, and commenced his term of supervised release. (Doc. 72 at 1.)

## II.    2011 Conviction and Supervised Release Violation

About a month prior to his release, in August 2007, supervision of Aguiar was transferred from the District of Vermont to the District of Massachusetts. (Doc. 27.) In 2009, however, having served fewer than three years of his supervised release term imposed as part of the 2001 sentence, Aguiar was arrested and again charged in this Court with conspiracy. *United States v. Aguiar*, No. 2:09-cr-90-1 (D. Vt. 2009) (*Aguiar II*). On August 5, 2009, a supervising United States Probation Officer filed a Petition with the district court in Massachusetts alleging that Aguiar had violated his supervised release term by committing the new crimes charged in Vermont in *Aguiar II*. (Doc. 32.) It appears this Petition was held in abeyance until resolution of the criminal charges against Aguiar.

On April 11, 2011, following trial by jury, Aguiar was found guilty of conspiracy and other Title 21 violations in *Aguiar II*. (*Aguiar II*, Doc. 479.) On December 12, 2011, Aguiar was sentenced in that case to 30 years in prison, to be followed by ten years of supervised release.[5] (*Aguiar II*, Docs. 590, 629.) At the conclusion of sentencing, the Court addressed the pending Petition alleging the

---

[5] The district court in the District of Massachusetts had earlier returned jurisdiction for supervision of Aguiar back to the District of Vermont. (*See* Docs. 31, 50-1 at 4.)

supervised release violation, finding that the verdicts of guilty in *Aguiar II* constituted sufficient proof of the charged supervised release violation, and imposing a sentence of 36 months, to run concurrently to the sentence in *Aguiar II*. (*Aguiar II*, Doc. 629 at 26; Doc. 34.) No notice of appeal was filed in connection with this revocation and judgment.[6]

On December 13, 2013, Aguiar's conviction in *Aguiar II* was affirmed on direct appeal, *United States v. Aguiar*, 737 F.3d 251 (2d Cir. 2013), *cert. denied*, 135 S. Ct. 400 (2014) (*Aguiar II*, Doc. 698); and on January 23, 2017, this Court denied Aguiar's § 2255 Motion to Vacate, Set Aside, or Correct Sentence (which was brought partly based on a claim of IAC) in that case (*Aguiar II*, Doc. 780). On July 18, 2017, an appeal of the denial of a certificate of appealability was dismissed by the Court of Appeals. (*Aguiar II*, Doc. 787.)

## III.    Petition for Writ of Error *Coram Nobis*

As noted above, on September 29, 2014, Aguiar filed a Petition for Writ of Error *Coram Nobis* pursuant to 28 U.S.C. § 1651. (Doc. 37.) Therein, he raised claims similar to those raised in the pending § 2255 Motion, including a claim related to the penalty provisions of 21 U.S.C. § 841.

Under 21 U.S.C. § 841(b)(1)(C) (2000), an offender who was convicted of violating § 841(a)(1) faced a term of imprisonment of up to 20 years, together with a

---

[6]  Inexplicably, on May 28, 2015, years after the district court in Massachusetts had returned jurisdiction of Aguiar's supervised release term to this Court, a clerk of the Massachusetts court entered a "Notice" stating that on January 23, 2008, Aguiar had "graduated from" that court's reentry initiative program and had "received one year off his term of supervised release." (Doc. 50-1 at 3.) However, beyond this entry, the Massachusetts docket is devoid of either any record of Aguiar's participation in a reentry program, or any written order by the court modifying Aguiar's supervised release term as required by 18 U.S.C. § 3583(e)(2).

three-year term of supervised release. Under § 841(b)(1)(C), an offender—such as Aguiar—who had a prior drug felony conviction faced a maximum term of imprisonment of up to 30 years, together with a six-year term of supervised release. These enhancements are not automatic, however. In order to trigger an enhanced penalty under § 841(b)(1)(B), the prosecution must follow the procedural requirements of 21 U.S.C. § 851. *United States v. DiFalco*, 837 F.3d 1207, 1214 (11th Cir. 2016). That section requires the government to file an information "stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851(a)(1). This notice allows the defendant to contest the accuracy of the government's pleading; it also affords the defendant "ample time to determine whether to enter a plea or go to trial and plan his trial strategy with full knowledge of the consequences of a potential guilty verdict." *United States v. Williams*, 59 F.3d 1180, 1185 (11th Cir. 1995). The statute also provides that after a § 851 information has been filed, the district court shall inquire of the defendant whether he affirms or denies the conviction alleged in the information and "inform him that any challenge to a prior conviction which is not made before sentence is imposed may not thereafter be raised to attack the sentence." 21 U.S.C. § 851(b). These procedural safeguards are mandatory and must be followed in all cases before a defendant's sentence may be enhanced under § 841. *Carachuri-Rosendo v. Holder*, 560 U.S. 563, 569 & n.6; *United States v. Thompson*, 473 F.3d 1137, 1144 (11th Cir. 2006). Here, although the count of conviction as alleged in the Indictment stated that Aguiar had sustained a prior drug felony conviction, the procedures of § 851 were not followed.

In his *coram nobis* Petition, Aguiar claimed that throughout the 2001 criminal proceeding, it was improperly assumed that he would be subject to a sentence enhancement under 21 U.S.C. § 841(b)(1)(B) because of his prior drug felony conviction, when in fact there could be no such enhancement because the government ultimately failed to file a § 851 information. (Doc. 37 at 6.) Aguiar further argued that without the required § 851 information, he was subject to a maximum sentence of 40 years under § 841(b)(1)(B), and not the life sentence of which his attorney warned. (*Id.* at 9.) Moreover, Aguiar asserted that, had his attorney given proper counsel regarding the consequences of the government's failure to file a § 851 information, his supervised release would have been capped at three years and not the six to which he was sentenced. (*Id.* at 12–13.) Aguiar alleged that his attorney's provision of misinformation regarding the filing of a § 851 information played a substantial role in Aguiar's decision to plead guilty, and thus constituted IAC.

In addition, Aguiar claimed in his *coram nobis* Petition that his 2011 sentence was enhanced by the 2001 conviction under 21 U.S.C. § 851, as well as by the career offender provisions of USSG § 4B1.1. (Doc. 37 at 22.) He contended that without these enhancements, his minimum statutory sentence would have been ten years, and his Sentencing Guideline range would have been 168–201 months. (*Id.*) On April 29, 2015, this Court issued an Opinion and Order denying Aguiar's *coram nobis* Petition on the grounds that the Petition was untimely and that Aguiar had failed to show any prejudice from the claims of error. (Doc. 48.) The Court found

that Aguiar had not sufficiently explained why he had not filed his petition in 2011 when he claimed he first discovered that no § 851 information had been filed. (*Id.* at 9–11.) The Court also found that Aguiar failed to show prejudice arising out of his guilty plea, because he failed to establish that he would not have pleaded guilty but for the erroneous advice. (*Id.* at 11–12.) Aguiar's direct appeal from the denial of the *coram nobis* Petition was unsuccessful. (Doc. 78.)

## IV.    Section 2255 Motion

On September 12, 2017, Aguiar filed the instant § 2255 Motion, raising several claims. (Doc. 67.) The first two claims are identical to those raised in his *coram nobis* Petition and his subsequent and unsuccessful motion to reconsider, as discussed above. (*Id.* at 5–6.) The third claim is that his counsel was ineffective for failing to appeal his revocation of supervised release. (*Id.* at 7.) And the fourth claim is that he is actually innocent of his revocation of supervised release and thus the Court erred in imposing a 36-month sentence because it exceeds the statutory maximum. (*Id.* at 9–10.) Aguiar has also filed a motion seeking to amend his § 2255 Motion. (Doc. 77.) A review of that motion reveals that Aguiar seeks to supplement his existing claims with additional argument and to add a claim that the district court clerk's office failed to docket his pro se notice of appeal from his supervised release sentence in December of 2011.

With respect to timeliness, Aguiar now contends that his claims "could not have accrued until August 2, 2017[,] when the Court updated the record from the U.S. District Court in Massachusetts." (Doc. 67 at 11.) He appears to argue that,

although he has pursued his claims with due diligence, because his attorney refused to provide him with his legal documents, he was unable to timely file the petition (*id.* at 10–11). He contends that the statute of limitations should not have begun running until he was able to review the updated, complete record. (*Id.*)

The government opposes Aguiar's § 2255 Motion, asserting that it is barred by the applicable one-year statute of limitation, and that the Court lacks jurisdiction over the Motion because Aguiar is no longer in custody as a result of the 2001 sentence.[7]

## Discussion

## I.    § 2255 Generally

28 U.S.C. § 2255(a) provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Relief under § 2255 is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (internal quotation

---

[7] According to Aguiar, in 2014, he believed he was no longer in federal custody for his 2001 sentence and that is why he filed a petition for *coram nobis* instead of a petition for habeas corpus. (Doc. 73 at 4.) Now, allegedly due to new information from prison administrators, Aguiar claims the opposite: that he in fact remains in federal custody for his 2001 conviction. Specifically, he contends that his 36-month concurrent sentence "continues to impose constraints on his liberty since his custody classification score continues to include his revocation conviction[,] resulting in a higher security level." (*Id.*)

marks omitted).  "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (internal quotation marks omitted).  A prisoner may receive an evidentiary hearing on his § 2255 motion unless "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that [he] is not entitled to relief." *Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) (internal quotation marks omitted).

## II.    Statute of Limitations

The government contends that Aguiar's § 2255 Motion is barred by the one-year statute of limitations that governs § 2255 motions pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  Under 28 U.S.C. § 2255(f), the one-year limitations period begins from the latest of:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

While the Second Circuit has not addressed the question, other circuits have held that the timeliness of claims in a § 2255 motion must be considered on a claim-by-claim basis. *Capozzi v. United States*, 768 F.3d 32, 33 (1st Cir. 2014) (collecting cases).

In this case, subsections (f)(2) and (3) of § 2255 clearly have no relevance. Similarly, subsection (f)(1) affords Aguiar no relief because Aguiar's 2001 conviction became final on August 6, 2001, 14 days after his judgment of conviction, *see Moshier v. United States*, 402 F.3d 116, 118 (2d Cir. 2005) (when, as here, no appeal is taken, the "judgment becomes final when the time for filing a direct appeal expires"); Fed. R. App. P. 4(b)(1)(A)(i), and he did not file the instant Motion within a year of that date. Thus, Aguiar's claims are barred by the statute of limitations unless they are saved by subsection (f)(4) of § 2255.

## A.      Timeliness of IAC Claim: Excessive Statutory Exposure

Aguiar contends that his attorney was ineffective when he provided erroneous advice regarding Aguiar's maximum statutory term of imprisonment and supervised release. According to Aguiar, because the government failed to file a § 851 information, Aguiar's exposure was limited to 20 years, rather than the 30-year term specified in the Plea Agreement. He similarly contends that his supervised release exposure was limited to three years, rather than the six-year term specified in the Plea Agreement. Aguiar claims this erroneous advice caused him to plead guilty in 2001.

Under § 2255(f)(4), the one-year statute of limitations began to run in this case "when a duly diligent person in [Aguiar's] circumstances would have discovered" the facts supporting his claim. *Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000). Aguiar bears the burden of demonstrating that due diligence. *See United States v. Nuckols*, No. 1:04–CR–139–01, 2009 WL 4684022, at *4 (D. Vt. Dec. 4, 2009) ("The burden of showing due diligence under § 2255(f)(4) is on the petitioner."). Aguiar fails to meet this burden, as he has not shown that he engaged in any effort to challenge his sentence or conviction from 2001 to 2009.

Aguiar counters by claiming that he did not learn about the § 851 requirement until 2011, and that it was not until September 2012 when he discovered the information was never filed. (Doc. 67-1 at 3–5; Doc. 72 at 4.) Even assuming the truth of these allegations, the one-year statute of limitations under both § 2255(f)(1) and (f)(4) had long since passed when Aguiar filed the instant § 2255 Motion in September 2017. His *coram nobis* Petition does not change this analysis because by the time Aguiar filed his untimely *coram nobis* Petition on September 29, 2014, the statute of limitations to file a § 2255 motion had already passed. (Doc. 37; *see also* Doc. 48.)

Aguiar argues that the claims now set forth in his § 2255 Motion could only have "accrued" on August 2, 2017, when the Court granted his "Motion to Update the Record" (Doc. 50). (Doc. 67 at 11.) The Court's text-only order granting that Motion, however, acknowledged only that the Massachusetts court records had been amended to state that Aguiar had completed a reentry initiative program and had

received a year off his supervised release term. (Doc. 62.) The order had nothing to do with Aguiar's discovery of the lack of a § 851 information in 2001. (*See id.*) More importantly, Aguiar has stated under penalty of perjury that he learned of the government's obligation to file a § 851 information in 2011 and that he learned of the government's failure to file that document in this case in September 2012. (Doc. 67-1 at 4–5.) As the Court has previously concluded, "[i]f, as Aguiar now argues, September 2012 is the proper date from which the Court should assess delay, it still took [him] nearly two years to file his *coram nobis* [P]etition." (Doc. 63 at 10.) And it took Aguiar over five years to file his § 2255 Motion. He also claims that he has been pursuing his claims with due diligence through "FOIA [requests], court motions, civil actions, post-conviction actions, [and] letters" in an attempt to obtain information about his case. (Doc. 67 at 10, 11.) But even if the filing of a *coram nobis* petition stops the running of the statute of limitations, the statute of limitations had already passed.

Accordingly, Aguiar's claim is barred by the applicable one-year statute of limitations.

**B.    Timeliness of IAC Claim: Failure to File a Notice of Appeal in 2011**.

Aguiar argues that his attorney was ineffective in 2011 when he failed to file a notice of appeal of his supervised release violation sentence despite Aguiar instructing him to do so. (Doc. 67 at 7, 11; Doc. 67-1 at 1.) Again, the exceptions to application of the one-year statute of limitations found in § 2255 (f)(1)–(3) clearly do not apply here, and only the exception found in § 2255(f)(4) may apply.

In an attachment to his § 2255 Motion, Aguiar states: "Immediately after his sentencing hearing, Mr. Aguiar told counsel to appeal his supervised release revocation . . . and understood that counsel had done so." (Doc. 67-1 at 5.) Aguiar further states that, "[i]n late[] 2012, [he] received and reviewed a copy of counsel's appellate brief and saw that counsel had not mentioned his supervised release revocation." (*Id.* at 5–6.) At that time, he claims he discovered that neither an appeal nor an § 851 information had ever been filed in his case. (*Id.* at 6.) Aguiar includes as an attachment to his Motion a letter from his attorney explaining why the supervised release revocation was not the subject of an appeal. (Doc. 67-3 at 2.) Thus, by the end of 2012, Aguiar was certainly aware of his potential failure-to-appeal claim. Nonetheless, he waited another almost five years to file the § 2255 Motion and about 18 months to file his *coram nobis* Petition.

Under § 2255(f)(4), the statute of limitations period runs from when the movant could have been, with due diligence, aware that his attorney had neglected to file an appeal. *Wims,* 225 F.3d at 189–90; *Shadid v. Nicolato,* No. 13 Civ. 5800(PGG)(JCF), 2014 WL 3639169, at *2 (S.D.N.Y. July 23, 2014) ("When an attorney fails to file a notice of appeal after making assurances that he would do so, the statute of limitations begins to run as of the date on which the petitioner should have learned of the lawyer's failure."). This realization occurred by Aguiar's own admission in 2012, and thus his claim is barred by the statute of limitations. *Plowden v. Romine,* 78 F. Supp. 2d 115, 119 (E.D.N.Y. 1999) (holding that the

19

petitioner's 17-month delay in inquiring about the status of his appeal did not show reasonable due diligence).

Similarly, Aguiar's claim that the clerk of court failed to docket a *pro se* notice of appeal is barred by the statute of limitations as he was aware of the lack of an appeal by 2012. Thus, § 2255(f)(4) cannot now save any of Aguiar's untimely claims.

Aguiar also asserts that he was unfairly surprised by the existence of the supervised release petition at his 2009 sentencing. This is simply not borne out by the record. At his sentencing in *Aguiar II*, when the Court inquired of Attorney Williams how Aguiar wished to proceed on the violation petition, Williams stated that he knew the petition had been filed and that it was presumed the conviction in *Aguiar II* would result in a finding of a violation. (*Aguiar II*, Doc. 629 at 2–3.) Williams informed the Court that because Aguiar wished to preserve his right to appeal the jury's finding of guilt, he did not wish to admit or deny the allegations set forth in the petition. (*Id.* at 3.) According to counsel, the jury verdict in *Aguiar II* was sufficient for the Court to find a violation. (*Id.* at 3–4.) Aguiar personally agreed to this process in open court, and expressed no concern. (*Id.* at 4.)

## C.    Actual Innocence

Aguiar asserts that he is "actually innocent" of the supervised release violation because the term of supervised release imposed in 2001 was longer than that permitted by statute, given the government's failure to follow the requirements of 21 U.S.C. § 851. (Doc. 67 at 9.) Aguiar contends that he is exempt from the limitations period set forth in 28 U.S.C. § 2255(f) because of this actual innocence.

In *McQuiggin v. Perkins*, 569 U.S. 383, 391–95, 398–401 (2013), the Supreme Court held that a state prisoner filing a federal petition for habeas corpus pursuant to 28 U.S.C. § 2254 could overcome the applicable limitations periods set forth in 28 U.S.C. § 2244(d)(1) and have his otherwise untimely petition reviewed on the merits upon an adequate showing of "actual innocence," just as habeas petitioners who are able to show "actual innocence" may be able to overcome certain other procedural hurdles.  Though *McQuiggin* involved an exception to the limitations periods set forth in § 2244, which is applicable to state prisoners, given the similarities between the limitations language used in § 2244(d)(1) and that used in § 2255(f), and the overriding concern that "federal constitutional errors do not result in the incarceration of innocent persons," *Herrera v. Collins*, 506 U.S. 390, 404 (1993), it is assumed that *McQuiggin* applies with equal force to habeas petitions filed by federal prisoners.  The *McQuiggin* Court held that, in order to invoke the actual-innocence exception to § 2244(d)(1)'s statute of limitations, the petitioner "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *McQuiggan*, 569 U.S. at 399 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  This "demanding" standard requires a petitioner to present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error."  *Id.* at 401 (quoting *Schlup*, 513 U.S. at 316).

Thus, in order to proceed with an otherwise untimely petition based upon "actual innocence," the petitioner must present evidence that he is actually innocent of the underlying crime, not merely that the sentencing court committed some technical error. "The Supreme Court, exploring the term 'actual innocence' in the course of determining whether a habeas claim may be entertained despite the applicant's prior default and his inability to make the cause-and-prejudice showing that would excuse the default, has made clear that 'the concept of actual innocence' is 'distinct from the concept of legal innocence.'" *Poindexter v. Nash*, 333 F.3d 372, 380 (2d Cir. 2003) (internal alterations omitted) (quoting *Smith v. Murray*, 477 U.S. 527, 537 (1986)). "In the context of a noncapital case, the concept of actual innocence is easy to grasp[] because it normally means simply that the defendant did not commit the crime." *Id.* (citation and internal quotation marks omitted).

Here, the record does not support Aguiar's claim of actual innocence. First, Aguiar advances no argument whatsoever to show he is actually innocent of the crime for which he was convicted in 2001. The essence of his claim is that his sentencing exposure was 20 years instead of 30 years' imprisonment and that his supervised release term was limited to three years rather than the six-year term imposed in 2001. This does not constitute a claim of actual innocence, and it ignores the following deficiencies: (1) there is no contention that Aguiar is actually innocent of the 2000 conduct for which he was convicted; (2) Aguiar committed the supervised release violation on July 29, 2009, having been released to commence his term on January 19, 2007 (Docs. 32, 34), and thus his violation occurred well within the

three-year term he states should have originally been imposed in 2001; and (3) there is no argument that Aguiar is actually innocent of the crimes for which he was convicted in 2009 in *Aguiar II*, which led to revocation of his supervised release.

Aguiar has presented no evidence to establish his actual innocence with respect to any of his claims, and therefore the "actual innocence" exception to his otherwise untimely § 2255 Motion is not available to him.

### D.    Equitable Tolling

Aguiar is not entitled to equitable tolling of the statute of limitations, which "applies only in the rare and exceptional circumstance[]." *Smith v. McGinnis*, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (alteration in original) (internal quotation marks omitted). In the Second Circuit, "tolling is appropriate only if [the petitioner] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance[ ] stood in his way and prevented timely filing." *Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010) (first alteration in original) (emphasis and internal quotation marks omitted). Aguiar's delay does not qualify as an "extraordinary circumstance" in the Second Circuit. *See Thomas v. Unger*, No. 06CV6578 NG, 2007 WL 539039, at *2 (E.D.N.Y. Feb. 15, 2007) ("[P]etitioner's arguments for equitable tolling—that he was ignorant of the law and had to rely on other inmates for help, lacked education, had difficulty in obtaining court records and receiving mail at the facility—are not 'extraordinary,' as they apply to most inmates."). Thus, Aguiar has not satisfied the requisite standards for tolling, and his *coram nobis* Petition did not revive otherwise expired claims. Moreover,

equitable tolling does not apply to toll the claims Aguiar asserts in his § 2255 Motion.

## III.    Evidentiary Hearing

Section 2255 requires that the district court hold an evidentiary hearing on the petitioner's motion unless "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Chang v. United States*, 250 F.3d 79, 85 (2d Cir. 2001) (internal quotation marks omitted) ("[A]lthough a hearing may be warranted, that conclusion does not 'imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim.'" (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962))).  Here, an evidentiary hearing is neither necessary nor warranted, as all the claims raised in Aguiar's § 2255 Motion may be resolved on the existing record, which conclusively demonstrates that Aguiar is not entitled to relief.[8]

## Conclusion

For these reasons, I recommend that Aguiar's Motion to Vacate, Set Aside, or Correct Sentence (Doc. 67) be DENIED.  I further recommend that Aguiar's Motion to Consider Additional Evidence in Support of Petitioner's Motion Under 28 U.S.C. § 2255 (Doc. 75) be DENIED as unnecessary.  Finally, I recommend that Aguiar's Motion for Leave to Amend 28 U.S.C. § 2255 Motion (Doc. 77) be DENIED.  Like his

---

[8]  The Court need not reach the issue of whether Aguiar remains in custody for the 2001 and 2009 supervised release judgments for the purposes of § 2255, because, as discussed above, his Motion is barred as untimely.

24

§ 2255 Motion, the claims raised therein are also barred by the statute of limitations.

The Court should decline to issue a certificate of appealability, given that Aguiar's claims are barred by 28 U.S.C. § 2255(f)'s one-year statute of limitations. Thus I am unable to find that "reasonable jurists could debate whether . . . [Aguiar's § 2255 Motion] should have been resolved in a different manner or that the issues presented [a]re adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted); *see* 28 U.S.C. § 2253(c)(2) (certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right").

Dated at Burlington, in the District of Vermont, this 26th day of March 2018.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).